UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re:

RON WILSON,                         CASE NO. 12-1256

LaRHONDA WILSON,                SECTION "F"(2)

           Debtors.                  CHAPTER 13

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE

Lender Processing Services, Inc., formerly known as Fidelity National Information Services, Inc. ("LPS"), files this Reply Memorandum in Support of its Motion to Withdraw the Reference.

### INTRODUCTION AND SUMMARY OF ARGUMENT

The United States Trustee ("UST") filed an Opposition to LPS's Motion to Withdraw the Reference (the "Opposition") that is as baffling as it is misguided. Sanctions are classified as either civil or criminal depending on the "trial court's apparent purpose for levying the sanctions." *Yaquinto v. Greer*, 81 B.R. 870, 879 (W.D. Tex. 1988). The UST advances the nonsensical position that the Bankruptcy Court cannot be taken at its word and asks this Court to ignore the plain meaning of the Bankruptcy Court's Referral Order.[1] The Bankruptcy Court was absolutely clear in the Referral Order that it seeks to punish LPS for "past offensive conduct and for violation of the duty of candor and truthfulness in dealings with [the] Court."[2] Therefore,

---

[1] In this briefing, Referral Order refers to the Referral Concerning Order to Show Cause filed by United States Bankruptcy Judge Elizabeth Magner on April 4, 2012 and docketed in this Court as case no. 12-882.

[2] Referral Order at 13.

{N2492861.3}
1

based on the uncontroverted position that bankruptcy courts in this circuit have no power, whether inherent or statutory, to hear and decide questions of criminal contempt,[3] the Bankruptcy Court itself concluded that "it lacks both the authority and jurisdiction to determine the amount of, enter, or enforce the request for sanctions by the UST or to adjudicate the appropriate sanctions resulting from the conduct of LPS."[4]

This lack of jurisdiction is sufficient cause for this Court to withdraw the reference. LPS submits that no sanctions, neither civil nor criminal, should be imposed upon it. But courts have consistently held that it is both appropriate and prudent for the district court to withdraw its reference to the bankruptcy court when it is alleged that sanctions of a criminal nature should be imposed upon an entity connected to a bankruptcy case.[5] As one bankruptcy court explained, "[b]ecause bankruptcy court jurisdiction is questionable," when criminal sanctions are allegedly necessary to address offensive conduct in a bankruptcy case, the "interest of judicial economy" is best served by having the district court withdraw the reference in regards to the motion and/or orders in the bankruptcy case which may implicate the criminal sanctions. *In re Stage Door Development, Inc.*, No. 07-11638, 2009 WL 2385080, at *2 (Bankr. M.D. Ala. July 31, 2009).

---

[3] *See In re Hipp*, 895 F.2d 1503, 1509 (5th Cir. 1990); *In re Ho*, No. 11-1512, 2012 WL 405092 (E.D. La. Feb. 8, 2012); *In re Ritter*, No. 11-1513, 2011 WL 5974623 (E.D. La. Nov. 29, 2011).

[4] Referral Order at 13.

[5] See *In re Avery*, No 01-28602, 2012 WL 1021348, at *7 (Bankr. D. Colo. March 20, 2012) (Bankruptcy court recommended that district court *sua sponte* withdraw the reference because "criminal sanctions" appeared necessary to address the misconduct at issue and the bankruptcy court's interpretation of the relevant case law led it to believe it lacked jurisdiction to impose "punitive sanctions"); *In re Stage Door Development, Inc.*, No. 07-11638, 2009 WL 2385080, at *2 (Bankr. M.D. Ala. July 31, 2009) (finding that since motion indicated potential criminal sanctions may be necessary and since the jurisdiction of the bankruptcy court to issue such sanctions was doubtful, the appropriate course of action was to recommend that the district court, *sua sponte*, withdraw the reference); *Hammitt v. U.S. Probation Office*, No. 07-356-03, 2007 WL 2482941 (W.D.N.C. Sept. 4, 2007) (noting that the district court *sua sponte* withdrew the reference in order to address the criminal contempt charges alleged by the bankruptcy court).

As the UST concedes, there are two matters related to LPS currently before the Bankruptcy Court: the Order to Show Cause ("OSC") issued to LPS; and the Motion for Sanctions ("Sanctions Motion") filed by the UST. The Bankruptcy Court issued the OSC to LPS directing that "a representative of [LPS] appear . . . , and explain the amounts due on the mortgage loan."[6] There is absolutely no support for the UST's statement that the OSC required LPS to "show cause why it should not be subject to a court remedy."[7] Despite the UST's statements to the contrary, LPS has been abundantly clear that it seeks withdrawal of the reference for all matters in which LPS might be sanctioned.

A. **THE BANKRUPTCY COURT'S LACK OF JURISDICTION**

1. **The Bankruptcy Court found "that it lacks both the authority and jurisdiction to determine the amount of, enter, or enforce the request for sanctions by the UST or to adjudicate the appropriate sanctions resulting from the conduct of LPS."**

The UST argues, incredibly, that the Bankruptcy Court's Referral Order should be ignored because it is not a "final order" that dismisses or otherwise resolves the Sanctions Motion. The UST also argues that the Bankruptcy Court's jurisdictional findings, as expressed in the Referral Order, are unfounded. But the Bankruptcy Court's jurisdictional findings in the Referral Order are so fundamental they cannot be ignored. In the Referral Order, the Bankruptcy Court specifically found that, pursuant to its reading of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), as well as *In re Ho*, No. 11-1512, 2012 WL 405092 (E.D. La. Feb. 8, 2012)(Feldman, J.), and *In re Ritter*, No. 11-1513, 2011 WL 5974623 (E.D. La. Nov. 29, 2011)(Barbier, J.), that "it lacked both the authority and jurisdiction to determine the amount of, enter, or enforce the request for sanctions by the UST or to adjudicate the appropriate sanctions resulting from the

---

[6] P-45

[7] Opposition at 4.

conduct of LPS."[8] The Bankruptcy Court could not have been clearer that it found that it lacked the authority and jurisdiction to enter any sanctions against LPS. The UST then insists that the Referral Order must be ignored because this Court "found that it, and not the Bankruptcy Court, lacked jurisdiction over the case."[9] Nothing in this Court's previous ruling, however, leads to the conclusion that the jurisdictional findings of the Bankruptcy Court in the Referral Order should be ignored or are immaterial. Instead, this Court decided that the Bankruptcy Court lacked the authority to refer a matter to it on its own. Because this Court did not resolve any of the jurisdictional concerns raised by the Bankruptcy Court in the Referral Order, LPS filed this Second Motion to Withdraw the Reference.

**2. The Bankruptcy Court lacks the authority to enter criminal contempt sanctions.**

Bankruptcy courts in this circuit have no power, inherent or statutory, to hear and decide questions of criminal contempt. *See In re Ho*, 2012 WL 405092 at *2. (*citing Hipp*, 895 F.2d at 1509); *see also In re Ritter*, 2011 WL 5974623. Therefore, as this Court has held, the threshold question for determining whether a bankruptcy court has jurisdiction is whether the sanctions would be civil or criminal in nature. *Ho*, 2012 WL 405092, at *2.

This Court has explained that a contempt order is classified as civil or criminal according to its primary purpose. *Id.* (*citing In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009)). A contempt order is civil if its purpose is to coerce the contemnor into compliance with a court order, or to

---

[8] Referral Order at 16.

[9] Opposition at 4. As the UST concedes in its Opposition, "the district courts [of the United States] shall have original but not exclusive jurisdiction of all *civil* proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b)(emphasis added). Congress has vested bankruptcy jurisdiction in the district courts and not the bankruptcy courts. *Id. See also In re Moody*, 899 F.2d 383, 386 (5th Cir. 1990). Once federal jurisdiction is established, a district court is permitted to refer such matters to the bankruptcy courts of that district. 28 U.S.C. § 157(a); *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010). It follows, therefore, that if the district court lacks jurisdiction, then so does the bankruptcy court. *See In re Carroll*, 464 B.R. 293, 310 (Bankr. N.D. Tex. 2011); *In re Eagle Bend Development*, 61 B.R. 451, 454 (Bankr. W.D. La. 1986).

compensate another party for injuries or costs resulting from the contemnor's misconduct. *Id.* A contempt order is criminal if its purpose is to punish the contemnor for past conduct and to vindicate the court's authority. *Id.* The central question is whether the penalty to be imposed is absolute, or is conditioned on the contemnor's future conduct. *Id.; see also Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)("A 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."); *Schafer v. Army & Air Force Exch. Serv.*, 376 F.3d 286, 298 (5th Cir. 2004). Sanctions issued pursuant to the court's "inherent authority" are subject to the same test. *Crowe v. Smith*, 151 F.3d 217, 226-27 (5th Cir. 1998). Bankruptcy courts have explained that they lack the jurisdiction to hear criminal contempt relating to past conduct "as opposed to criminally contemptuous conduct occurring in an ongoing hearing that the court must be able to address in order to maintain decorum." *See In re Akl*, No. 07-256, 2008 WL 5102277, at *1 (Bankr. D.D.C. Sept. 4, 2008).

Despite the UST's suggestions to the contrary, the only remaining award other than attorneys' fees[10] that the Bankruptcy Court could impose against LPS on the issues raised in the Sanctions Motion would be punitive in nature. Because LPS no longer executes affidavits in support of motions to modify the automatic stay and has not done so since September 2008, any remedial sanctions regarding future affidavits would be meaningless.[11]

---

[10] Whether and to what extent attorneys' fees should be awarded is so intertwined with the other sanctions in this matter that the reference should be withdrawn on all matters, with one court ruling on all issues at one time. This was obviously the conclusion of the Bankruptcy Court, when the Referral Order was entered.

[11] Sanctions for affidavits that may have been executed outside of this particular case violate the case and controversy requirement of Article III of the United States Constitution. *See* U.S. CONST. art. III; *Wells Fargo Bank, N.A. v. Stewart (In re Stewart)*, 647 F.3d 553 (5th Cir. 2011).

The UST insists that LPS's "professed concern regarding criminal contempt is . . . unfounded."[12] The UST argues that its motion only seeks "attorney's fees and civil compensatory remedies as [the] Bankruptcy Court determines are appropriate."[13] Yet the Bankruptcy Court contradicts the UST's position in the Referral Order. For example, the Referral Order provides as follows:

> Because this matter involves components of *punishment* for past offensive conduct and for violation of the duty of candor and truthfulness in dealings with this Court; compensation for the expenditure of Debtors' and UST's resources; and a need to deter future misconduct, this Court lacks the ability to enter the *full measure of relief requested and warranted*.[14]

Thus, despite the UST's repeated insistence to the contrary, the Bankruptcy Court was absolutely clear that the primary purpose of any further sanctions would be to punish LPS. At the same time, the Bankruptcy Court lacks the authority and jurisdiction to issue criminal sanctions against LPS, as it so held in the Referral Order.[15]

---

[12] Opposition at 10.

[13] *Id.*

[14] Referral Order at 13 (emphasis added).

[15] The UST's suggestion that 11 U.S.C. § 105 gives bankruptcy courts the power to issue criminal sanctions is without merit. The UST fails to cite a single case from the Fifth Circuit that holds that section 105 authorizes a bankruptcy court to issue criminal sanctions. Indeed, as already explained, in this circuit, bankruptcy courts have no authority, whether inherent or statutory, to issue criminal sanctions. *Ho*, 2012 WL 405092, at *2. Other circuits have confirmed that bankruptcy courts are prohibited from entering punitive sanctions even if the bankruptcy court represents that it is acting pursuant to inherent authority rather than an explicitly labeled contempt proceeding. *In re Upland Partners*, 315 Fed. App'x. 5 (9th Cir. 2008); *In re Avery*, No. 11-30256, 2012 WL 1021348 (Bankr. D. Colo. Mar. 20, 2012). Interestingly, in *Avery*, the UST specifically argued that a bankruptcy court lacked the jurisdiction to enter punitive sanctions and suggested that the matter be handled by the district court.

B.  CAUSE EXISTS TO WITHDRAW THE REFERENCE

1. The UST's arguments that cause does not exist are unavailing and disingenuous.

As both LPS and the UST agree, "District courts typically consider several factors when deciding whether cause exists to withdraw the automatic reference: whether the proceeding involves core bankruptcy matters, the interest of judicial economy, promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering economical use of the debtor's and creditor's resources, expediting the bankruptcy process, and whether there has been a jury demand." *So. La. Ethanol v. Agrico Sales, Inc. (In re So. La. Ethanol)*, No. 11-3059, 2012 WL 174646, at *2 (E.D. La. Jan. 20, 2012). The potential that LPS could face sanctions beyond the authority and jurisdiction of the Bankruptcy Court is sufficient cause, by itself, to withdraw the reference. *See Parklane Hosiery Co., Inc. v. Parklane/Atlanta Joint Venture (In re Parklane/Atlanta Joint Venture)*, 927 F.2d 532, 538 (11th Cir. 1991)("Nevertheless, the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts."); *Picard v. Flinn Investments*, 463 B.R. 280, 287 n.3 (S.D.N.Y. 2011)("[T]he Court has full discretion to withdraw the reference, on its own initiative, for 'cause shown,' and the Court finds that the litigants' interest in having an Article III court resolve a difficult constitutional issue constitutes cause."); *In re Am. Solar King Corp.*, 92 B.R. 207, 209 (W.D. Tex. 1988)("Section 157(d) permits the district court to revoke its earlier automatic referral to the bankruptcy court (i.e. 'withdraw' its 'reference' of the case) if the matter involves law that should or must be adjudicated by an Article III court.").

2. Whether this matter is core is unclear and disputed, which militates in favor of withdrawal.

The UST insists that this matter is core because it relates to the motion for relief from the automatic stay filed by Option One.[16] Courts remain consistent in their determination that "civil contempt proceedings arising out of core matters are themselves core matters." *See Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir. 1990). The UST concedes, however, that criminal contempt proceedings may not be core.[17] Other courts agree. In a matter involving claims of dishonest testimony before a bankruptcy judge, one court held that a motion to impose criminal sanctions related to that testimony were independent of the bankruptcy itself and could not be considered core. *Akl*, 2008 WL 5102277, at *2.

While the UST argues that any dispute between the Government and a person subject to its authority may be determined by non-Article III tribunals, a position that LPS disputes, the UST failed to address the statutory gap created by *Stern*. *See* D. Baird, *Blue Collar Constitutional Law*, 86 AM. BANKR. L.J. 3, 16 (2012). 28 U.S.C. § 157(b) provides that bankruptcy courts may enter final orders in all core matters. In contrast, section 157(c) and FED. R. BANKR. P. 9033 authorize a bankruptcy court to enter proposed findings of fact and conclusions of law only when a matter is non-core. Courts have held, however, that section 157 does not authorize a bankruptcy court to enter proposed findings of fact and conclusions of law in proceedings that are designated as core under section 157(b). *See Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 915 (7th Cir. 2011). This would suggest that if the Bankruptcy Court does not have jurisdiction to enter an order in a criminal contempt matter that the matter is either non-core or it is a matter that, while core, requires an Article III court to adjudicate. Therefore, even if the Sanctions Motion involves a core matter, the Bankruptcy

---

[16] Opposition at 10.

[17] Opposition at 11 n.5 ("If future events provide LPS with a basis for its stated concern regarding potential criminal contempt, that issue can be addressed at an appropriate future time.").

Court lacks the jurisdiction to enter a final order. Consequently, pursuant to the reasoning in *Ortiz*, which remains undisputed by the UST, the Bankruptcy Court lacks the statutory authority to enter proposed findings of fact and conclusions of law. The UST failed to clarify whether this matter is core or non-core. Given the potential consequences of *Ortiz*, this factor weighs in favor of withdrawing the reference.

### 3. Judicial economy warrants withdrawal of the reference.

The UST argues that judicial resources will be better served if this matter remains with the Bankruptcy Court. But the Bankruptcy Court has already determined that it lacks "both the authority and jurisdiction to determine the amount of, enter, or enforce the request for sanctions by the UST or to adjudicate the appropriate sanctions resulting from the conduct of LPS."[18] As the Bankruptcy Court is prohibited from entering any type of criminal sanction order, any such findings must be reviewed by this Court *de novo*. *See Hipp*, 895 F.2d at 1520 ("The one who decides must hear."). As the *Hipp* court explained, a district court cannot rely on the record of findings made by the bankruptcy court in deciding criminal contempt matters. Therefore, the reference should be withdrawn to ensure that this matter is decided by a court of competent jurisdiction.

### 4. LPS is not forum shopping.

The UST's accusation that LPS is engaged in improper forum shopping is disingenuous. LPS filed its Motion to Withdraw the Reference *after* the Bankruptcy Court determined that it lacked authority and jurisdiction to proceed. To suggest that LPS filed its Motion "only after receiving the adverse order from the Bankruptcy Court and facing a potentially imminent decision from the Bankruptcy Court on remedies" is a gross mischaracterization of events.

---

[18] Referral Order at 13.

{N2492861.3}

LPS has never questioned the power of the Bankruptcy Court to enter civil sanctions -- those sanctions that are meant to compensate or coerce. LPS has never agreed, on the other hand, to allow the Bankruptcy Court to enter criminal sanctions designed to punish. Indeed, since before the Sanctions Motion was filed, LPS has suggested that the Bankruptcy Court lacked jurisdiction to enter an order sanctioning LPS.[19]

Because the Bankruptcy Court has specifically found that it lacks jurisdiction to enter an order sanctioning LPS, why does the UST insist on remaining before that court? It appears on its face that the UST is the one engaging in forum shopping.

**WHEREFORE**, LPS prays that the Motion to Withdraw the Reference be sustained, and for all other relief to which it is entitled in law and equity.

Respectfully submitted, this 19th day of July, 2012, at New Orleans, Louisiana.

/s/ R. Patrick Vance
---
R. PATRICK VANCE (LA Bar No. 13008)
ELIZABETH J FUTRELL (LA Bar No. 0563)
MARK A. MINTZ (LA Bar No. 31878)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8194
Telefax: (504) 589-8194
pvance@joneswalker.com
efutrell@joneswalker.com
mmintz@joneswalker.com

***Attorneys for Lender Processing Service, Inc. formerly known as Fidelity National Information Services, Inc.***

---

[19] *See Motion to Quash U.S. Trustee's Discovery Requests*, P-76, filed October 30, 2008; *Post-Trial Brief*, P-298, filed February 1, 2011; *LPS's Memorandum Regarding Sanctions* (P-325), filed October 14, 2011.

{N2492861.3}

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | |
| RON WILSON, | CASE NO. 12-1256 |
| LaRHONDA WILSON, | SECTION "F"(2) |
| Debtors. | CHAPTER 13 |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of foregoing Reply Memorandum served on the parties below via ECF notice and to parties registered or otherwise entitled to receive notice in this case and/or U.S. Mail, postage prepaid, this 19th day of July, 2012.

/s/ R. Patrick Vance
R. PATRICK VANCE

Elisabeth D. Harrington
2901 N. Causeway Boulevard, Suite 303
Metairie, Louisiana 70002
swamplaw@bellsouth.net
Counsel for Debtors

Susan Fahey Desmond
Watkins Ludlam Winter & Stennis, P.A.
P.O. Drawer 160 (39502)
2510 4th Avenue, Suite 1125
Gulfport, Mississippi 39501
sdesmond@watkinsludlam.com
Counsel for Option One Mortgage Corp.

Kurt F. Gwynne
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
kgwynne@reedsmith.com
Counsel for Option One Mortgage Corp.

Jacob S. Edwards
The Boles Law Firm, APC
1818 Avenue of America
Monroe, Louisiana 71201
jacob.edwards@boleslawfirm.com

S. J. Beaulieu, Jr.
Chapter 13 Trustee
433 Metairie Road, Suite 307
Metairie, Louisiana 70005

Amanda Burnette George
Office of the U.S. Trustee
400 Poydras St., Suite 2110
New Orleans, Louisiana 70130
Counsel for U.S. Trustee

Joan S. Swyers
Office of the U.S. Trustee
20 Massachusetts Avenue
N.W., Eighth Floor
Washington, DC 20530
Counsel for U.S. Trustee

Sean M. Haynes
Office of the U.S. Trustee
200 Jefferson Ave., Suite 400
Memphis, TN 38103
sean.m.haynes@usdoj.gov
Counsel for U.S. Trustee

Hilary B. Bonial
Brice Vander Linden & Wernick PC
9441 LBJ Freeway, Suite 350
Dallas, Texas 75243
notice@bkcylaw.com
Counsel for American Home Mortgage Servicing, Inc.